NYE-SCHNEIDER-FOWLER COMPANY, APPELLANT, v. J. F.
ROESER ET AL., APPELLEES.

FILED JUNE 28, 1919. No. 20437.

1. **Schools and School Districts:** PUBLIC BUILDING: BOND OF CONTRAC-
   TOR: CONSTRUCTION. The statute which requires public officials
   to take a bond from a contractor to pay for labor and materials
   used in constructing a public building is absolute, and the con-
   tract and the bond will be construed to protect such laborers and
   materialmen if the terms of the contract and bond are ambiguous,
   or if they will admit of such construction.

2. ———: CONTRACT: BOND: PRESUMPTION. If the contract provides
   that a bond shall be given, but does not name any conditions to
   be inserted in the bond, it will be presumed that the intention
   of the parties was that the statutory bond should be given.

3. ———: ———: ———: CONSTRUCTION. In such case, if the bond
   contains the conditions usually inserted in a bond for construc-
   tion of a private building, with a proviso that of itself would
   imply that it was for the protection of laborers and materialmen,
   the contract and bond, taken together, will be so construed.

4. ———: CONSTRUCTION OF SCHOOLHOUSE: BOND: LABOR AND MATERI-
   ALS. A contract and bond "for the erection and completion of a
   school building" contemplates that the contractor will furnish the
   labor and materials, and the bond undertakes that he will do so,
   and, liberally construed as an attempted compliance with the
   statute, it includes payment by the contractor for the labor and
   materials.

5. ———: ———: ———: SURETIES: WAIVER. The statute requires
   two sureties upon such bond, but if there is but one surety, and
   the bond names him as the sole surety, and he knows that it is
   not intended that any other shall join him as surety, by signing
   he waives the defect.

6. ———: ———: ———: ACCEPTANCE: VALIDITY. If a bond is ac-
   cepted and acted upon by the school board, it amounts to approval,
   and the bond will not be held void because the contract pro-
   vides that it may be approved by the cashier of a bank, nor be-
   cause it nominally runs to the district by name instead of to
   the board.

APPEAL from the district court for Fillmore county:
RALPH D. BROWN, JUDGE. *Reversed.*

*Courtright, Sidner & Lee,* for appellant.

*George H. Hastings, Charles H. Sloan, Frank W. Sloan* and *J. J. Burke, contra.*

SEDGWICK, J.

The defendant Roeser contracted with the school district to erect a school building, and gave a bond as contractor, and this action is by the materialman and is against the principal and surety on the bond. The defendants demurred generally to the petition, which was sustained, and the action dismissed, and the plaintiff has appealed. The contract is very indefinite, uncertain, and incomplete. Some of the necessary provisions of any such contract are supplied in the terms of the bond, but the bond is not a compliance with the statute. It contains no provision for the payment of laborers and materialmen as the statute (Rev. St. 1913, sec. 3840) requires; and it is contended that the law will not "read into such an attempted bond all that it should contain."

There are many decisions of this court which announce principles or use language that might be applicable to some phases of a case like this. Before our statute (Rev. St. 1913, sec. 3840) was enacted in 1889 (Laws 1889, ch. 28), the laborer or materialman who furnished labor or material for the erection of a public building had no protection except the responsibility of the contractor, and such bond as the contractor and the public officials might see fit to provide. A laborer who was in the habit of relying upon the mechanics' lien law frequently found that he had worked upon public buildings without compensation. Then the statute was enacted requiring absolutely that one who contracted to build a public building which would not be subject to mechanics' liens must give bond to pay laborers and materialmen. Contractors have not always obeyed this statute. Some have tried to evade it and so profit by the work of a laborer without paying for it. Others have intended to comply with the law, but have failed to condition the

bond given as the statute requires. Cases of the latter kind have led to divergent decisions. Courts of the different states are not in harmony, and it may be that even the decisions of this court are not altogether consistent. If the case is that of a laborer who has performed a few days' labor relying upon the public to pay for the public improvement, and the public has paid the wrong party and has not required him to secure the laborer, his case will be presented with great earnestness and will generally be supported by citations of authorities. On the other hand, if the contractor succeeds in getting an inexperienced surety who is led to suppose that the public officials will see that the laborer is paid for his work, as an individual would be compelled to do by the mechanics' lien law, his case will be as earnestly and vigorously presented. The one case may be disposed of with consideration of the text, "The laborer is worthy of his hire." In the other, the legal maxim will be invoked that a surety is the favorite of the law.

In the case at bar, it must be remembered that the statute is absolute. It requires that when public buildings are to be constructed, not subject to mechanics' liens for the protection of laborers and materialmen, a bond must be given for their protection in lieu of the mechanic's lien upon the private buildings. The bond in this case refers to the contract, and is an attempt to comply therewith. The contract is very inartistically worded. The contractor expressly agrees to give bond, and names the amount of the bond, but does not state the conditions of the bond. Any trifling conditions of the bond which the contractor might see fit to specify therein would be a compliance with his contract, upon the present theory of these defendants. Both parties to the building contract were required to know that the law requires a bond and directs its conditions. It was therefore unnecessary to state in the contract what the conditions of the bond shall be. This language of the con-

tract shall have all the force of an express agreement
to give a bond conditioned as the statute provides.

The bond contains a formal statement of the con-
ditions, as follows: "The conditions of the foregoing
obligation is (are) such that if the principal shall, well
and truly, indemnify and save harmless the said obligee
from and (any) pecuniary loss resulting from the breach
of any of the terms, convenants and conditions of the
said contract on the part of the principal to be per-
formed, then this obligation shall be void." This state-
ment of the conditions of the bond might be proper in
case of a contract between private individuals, and,
as said in *Sailling v. Morrell*, 97 Neb. 454, it was ap-
parently inserted by mistake in this bond. In that case
the bond recited: "The surety shall not be liable under
this bond to any one except the owner." And the court
said: "If this clause in the contract is to be upheld in
a case where the contract is for work upon public prop-
erty, against which no lien can ever exist, then the enter-
ing into such a bond is a delusion and a snare.  *  *  *
It is too evident for serious thought to the contrary that
the bond used in this case was the form of bond
generally used for contractors under contracts for the
construction or repair of buildings for individuals or
private corporations, where, in case of a default on the
part of the contractor to pay for the materials furnished
and labor performed, a lien would attach. Such a clause
has no place in a bond given for the faithful performance
of a contract upon a public building. That it was not
stricken out of the form of bond used in this instance
may have been an oversight on the part of all parties
concerned at the time the bond was executed." This
language is more applicable to the present case, the
contract here being to give a bond without naming the
conditions, which would clearly be a statutory bond;
and this formal statement of the conditions in the bond
is followed in the same sentence by the following: "Pro-
vided, however, that this bond is subject to the following

conditions and provisions: First, that no liability shall attach to the sureties unless in the event of any default on the part of the principal in the performance of any of the terms, covenants, or conditions of the said contract." Under the circumstances, the statement that no liability shall attach unless there is a default on the part of the principal in the performance of the terms of his contract shows clearly that the understanding of the parties was that in case of such default there should be liability.

The contract was "to erect a school building" for a specified price, and the bond construes this to mean that the contractor was bound "for the erection and completion of the school building." He could not erect and complete the school building without furnishing the labor and materials, and the bond undertakes that he will do so. Labor and materials were furnished under this contract, and it must be construed that they were furnished according to the contract by the contractor himself. The labor and materials would not be his to furnish without payment therefor, and therefore the contract and the bond include payment by the contractor for the labor and materials. We have frequently decided that, if a bond is given with "reference" to a statute, the provisions of the statute will be considered as in the bond. It appears that the contractor and his surety knew that they were contracting with reference to a public building, and that the statute requires in such case that a bond should be given. For the reasons stated, we conclude that they contemplated and intended to comply with this statute in giving the bond. If so, of course the bond was given with reference to the statute.

The statute requires two sureties on such bond, and, when signed by only one surety, "he is not liable thereon; the bond not being perfect on its face, unless he waive the defect." *Cutler v. Roberts,* 7 Neb. 4. But when a surety signs a bond that specifies upon its face that only one surety will sign, the party who is recited

in such bond as surety does by signing it "waive the defect." The fact that the obligee named in the bond is the district itself instead of the district board, and that the contract provides that the bond may be approved by the cashier of a bank, will not relieve the surety from liability thereon, since the board accepted the bond and acted thereon, which amount to approval. The board might have refused to accept such a bond.

In this view of the case, the petition states a cause of action and was not subject to a general demurrer.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED

CORNISH, J., dissenting.

The promise in the contract was to "save harmless the said obligee from pecuniary loss resulting from the breach," etc. The obligee has suffered no pecuniary loss, and yet we are holding the surety on the bond liable for loss suffered by third parties, strangers to the contract, and in a case where it cannot be said that any promise was made for their benefit, unless we say that the parties intended the statutory bond. The opinion says: "It (the contract) contains no provision for the payment of laborers and materialmen as the statute requires." Is not the situation then clear? A provision intended, or possibly intended, is not inserted. Must we not then say to the plaintiff, as we said, in substance, to the plaintiff in *Perkins County v. Miller,* 55 Neb. 141: "You can recover only upon the contract as made and alleged. If written contrary to the intention of the parties in omitting a provision intended by them, then your remedy is to have the contract reformed so as to express the true intent of the parties." This has been the law from time immemorial. For a special statute or another writing to become part of the written contract, it must be incorporated in it, in words clearly showing an intention to do so. The opinion agrees that it was not so incorporated, but appears to hold that we can read the

statute into the contract, because, by a process of what I regard as unsound reasoning or innuendo, we persuade ourselves that the parties may have or should have so intended. Do we not know that the fact, in all probability, is to the contrary—that this surety, an ignorant man, signing for his friend without consideration, and heretofore a favorite of the law, never knew of the statute, and only thought he was promising to save the obligee harmless? There is no rule of law that a statute like this can be read into the contract, whether incorporated or not. I know of no text-book writer or decisions of other states so holding. This is because the statute does not undertake to say what the contract shall be between the school officers and this particular surety. It prescribes a duty for the school officers alone, who may be liable for negligence to any person injured by their failure to perform. A contractor does not "disobey" the law, as the opinion says, in failing to give the statutory bond. He may refuse to give it, or be unable to give it, or ignorantly fail to give it, in any of which cases he is only liable on his contract as made. But his (the contractor's) intention or liability is not in point. Surely the surety cannot be held liable for some secret intent of the contractor, undisclosed to him, and, as the opinion says, not expressed in the contract. The law is read into any and all contracts only in so far as the law is applicable to the contract as written. If a contract is ambiguous or uncertain, then it is either void or subject to testimony to explain the ambiguity. Here we are denying to the surety the right to prove by the testimony of all the parties that he did not intend to have inserted in the contract the provision in question; the opinion itself showing that it was not so inserted.

Let us suppose that testimony were taken which would show (as it probably would not) that at the time the surety signed the bond he was told of the statutory bond and had peremptorily refused to sign such a bond. Then, I would like to know by what law he could be held

liable except upon the bond which he does sign. The law never makes the contract between the parties except in those cases where the law undertakes to say what the contract shall be, as sometimes in insurance law. The citizen is left free to contract in his own way and is bound only by the terms of the contract as made.

When courts begin to interpret contracts differently from their true intent, they enter a most dangerous field of innovation. Following such a rule, it will easily come about that the citizen's rights in his dealings with others will be determined by his or the others' social status. Labor will be degraded, not helped, and the citizen's most valuable right of freely contracting denied. I have discussed one phase of the question involved in my dissent in *Forburger Stone Co. v. Lion Bonding & Surety Co. ante,* p. 202, 208.